IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **WESTFIELD INSURANCE COMPANY AND MAHONING VALLEY SUPPLY COMPANY,** | ) ) ) |
| | ) CASE NO. 1:13CV02367 |
| Plaintiffs, | ) ) JUDGE DONALD C. NUGENT |
| | ) ) |
| v. | ) ) |
| **CONTINENTAL INSURANCE COMPANY, et al.** | ) ) M EMORANDUM OPINION ) AND ORDER |
| Defendants. | ) |

This case is before the Court on cross motions for partial summary judgment on Count Two of the Amended Complaint only (ECF #38 and #46) respectively filed by Plaintiffs, Westfield Insurance Company ("Westfield") and Mahoning Valley Supply Company ("MVS"), and Defendant Continental Insurance Company, as successor by merger to The Buckeye Union Insurance Company ("Continental"). The opposing sides of this insurance dispute seek a determination whether, under the language of the applicable insurance policies, asbestos claims against Plaintiff MVS arise out of a single occurrence or multiple occurrences. If the former is true, the per occurrence limitations of the applicable insurance policies are near exhaustion. If the Court finds multiple occurrences, policy limits have not been reached and coverage is still available to MVS.

The facts are not in dispute. The parties agree that the matter to be decided is a question

1

of law. Thus, this controversy is ripe for resolution via summary judgment. For the reasons stated herein, Plaintiffs' motion for partial summary judgment (ECF #38) is GRANTED, Continental's cross motion for partial summary judgment is DENIED. As a matter of law, the asbestos claims against Plaintiff MVS arise out of multiple occurrences, such that the per occurrence limitations of the applicable insurance policies have not been exhausted.

## I. FACTS

Plaintiff MVS is a building supplier. MVS never manufactured or installed any asbestos-containing products. Rather, MVS was an Ohio corporation that acted as a wholesale distributor/supplier of industrial products containing asbestos that were manufactured by others.

MVS has been sued by numerous claimants who allege that they have been injured by asbestos-containing products manufactured by third parties but sold or supplied by MVS.[1] These claimants allege exposure to asbestos fibers at a variety of job sites, on numerous dates, and under a variety of conditions. Because the lawsuits allege bodily injuries stemming from exposure occurring during years when both Westfield and Continental insured MVS, Westfield and Continental have been sharing defense and indemnity costs.

Continental insured MVS through three separate three-year policies beginning November 30, 1972 (the "Policies").[2] On February 18, 2013, a claims handler for Continental sent a letter

---

[1] MVS filed dissolution papers with the State of Ohio on March 22, 2002. MVS continues to be named in asbestos lawsuits.

[2] The Policies were issued by Buckeye Union Insurance Company. Buckeye Union merged with Continental on December 31, 2006. Accordingly, Buckeye will be referred to herein as Continental, and the Buckeye Policies will be referred to as Continental Policies for purposes of this Order.

(the "Letter") to MVS stating that the Policies were nearly exhausted.[3] The letter further stated that $1,496,800.03 had been paid under the Policies in resolution of asbestos claims, leaving a remaining policy limit of $3,199.87 (for a total coverage amount of $1,500,000.00).

Although the Letter does not so state, the parties agree that the Letter refers to the Policies' coverage limits in the amount of $500,000.00 for each "occurrence". The parties further agree that each of the Policies provides coverage, subject to its terms, conditions and exclusions, in the amount of $500,000.00 for each occurrence and $500,000.00 in the aggregate. There is no dispute that the aggregate limits apply on an annual basis (for a total of $4,500,000.00 in coverage under the three policies over three years), and Continental concedes that the aggregate limits have not been exhausted in payment of MVS asbestos claims. The sole issue in dispute is whether Continental properly determined, as generally expressed in the Letter, that MVS asbestos claims arise out of a single "occurrence" (rather than multiple occurrences as Plaintiffs contend), such that its coverage obligations are satisfied when it pays a total of $1.5 million in settlements, i.e., the $500,000.00 each occurrence limit in each of the three Continental Policies.

Thus, the only issue before this Court is whether MVS asbestos claims arise out of a single occurrence or multiple occurrences within the meaning of the Policies. The parties agree that the Policies contain the following relevant terms:

---

[3] Continental issued the following Policies to MVS: (1) policy CBP 6134, effective from November 30, 1972 to November 30, 1975; (2) Policy CBP 9609, effective from November 30, 1975 to November 30, 1978; and (3) policy CBP 12674, effective from November 30, 1978 to January 1, 1981. Although the parties have been unable to locate policy CBP 6134, the parties do not dispute that each of the Policies provides coverage, subject to its terms, conditions and exclusions, in the amount of $500,000.00 for each occurrence and $500,000.00 in the aggregate, and that each contains the same relevant provisions.

I. **COVERAGE A – BODILY INJURY LIABILITY**

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

A. **bodily injury** or
B. **property damage**

to which this insurance applies, caused by an **occurrence**, and the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **bodily injury or property damage**, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

\* \* \*

III. **LIMITS OF LIABILITY**

Regardless of the number of (1) **insureds** under this endorsement, (2) persons or organizations who sustain **bodily injury** or **property damage**, or (3) claims made or suits brought on account of bodily injury or property damage, the company's liability under this endorsement is limited as follows:

**Coverage A** – The total liability of the company for all damages, including damages for care and loss of services because of **bodily injury** sustained by one or more persons as the result of any one **occurrence** shall not exceed the limit of **bodily injury** liability stated in the declarations as applicable to "**each occurrence**."

Subject to the above provision respecting "each **occurrence**," the total liability of the company for all damages because of (1) all **bodily injury** included within the **completed operations hazard** and (2) all **bodily injury** included with the **products hazard** shall not exceed the limit of **bodily injury** liability stated in the declarations as "aggregate".

\* \* \*

**Coverages A and B** – For the purpose of determining the limit of the company's liability, all **bodily injury** and **property damage** arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one **occurrence**. [emphasis in bold in original]

4

> Any limit of the company's liability stated in the endorsement as "aggregate" shall apply separately to each consecutive annual period comprising the policy period.
>
> * * *
>
> "Occurrence" is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."
>
> "bodily injury" is defined to mean "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom.

## II. STANDARD OF REVIEW

Summary judgment under Rule 56 is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show "that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed .R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists," and the court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001). When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

With regard to the non-moving party's obligation to set out specific facts showing a genuine issue for trial, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379-80 (6th Cir. 2007) (citation omitted). Rather, "Rule 56

allocates that duty to the opponent of the motion, which is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Id.*

Accordingly, the ultimate inquiry is whether the record, as a whole, and upon viewing it in the light most favorable to the non-moving party, could lead a rational trier of fact to find in favor of the non-moving party. *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87. The Court's inquiry, therefore, asks whether reasonable jurors could find by a preponderance of the evidence that the non-moving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Here, the coverage dispute involves purely legal issues, and there are no genuine issues of material fact. *Sharonville v. Am. Emp'rs Ins. Co.*, 109 Ohio St.3d 186, 846 N.E. 2d 833, ¶ 6. Summary judgment is thus appropriate. The Court may issue a dispositive judgment on the matter at hand without the need to submit the issue to a jury.

### III. DISCUSSION

The sole issue before this Court on summary judgment is whether under the Policies' terms, the MVS asbestos claims arise out of a single occurrence or multiple occurrences. Continental contends that MVS asbestos claims arise out of a single occurrence, namely, MVS' decision to distribute asbestos-containing products, such that the $500,000.00 each occurrence limit in each of the three Policies is near exhaustion. Plaintiffs contend that MVS asbestos claims arise from multiple occurrences, specifically, each MVS claimant's exposure to harmful asbestos fibers contained in the products distributed by MVS at various times and under multiple circumstances. Plaintiffs further argue that, in view of multiple occurrences, the $500,000.00 each occurrence limit in each of the three Policies is not approaching exhaustion. For the reasons

that follow, the Court holds that the MVS asbestos claims arise from multiple occurrences. Accordingly, coverage remains available to MVS under the Policies.

An insurance policy is a contract, and its interpretation is a matter of law for the court. *Sharonville v. Am. Emp. Ins. Co.*, 109 Ohio St.3d 186, 2006–Ohio–2180, 846 N.E.2d 833, ¶ 6. The coverage under an insurance policy is determined by construing the contract "in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 211, 519 N.E.2d 1380. Contract terms are to be given their plain and ordinary meaning, *Dunson v. Home–Owners Ins. Co.*, 3d Dist. No. 5–09–37, 2010–Ohio–1928, 2010 WL 1740928, ¶ 13, and when an insurance clause is clear and unambiguous, the court may look no further than the four corners of the insurance policy to find the intent of the parties. *Fed. Ins. Co. v. Exec Coach Luxury Travel, Inc.*, Nos. 1-09-17 and 1-09-18, 2009 WL 3720556, at *3 (Ohio Ct. App. Nov. 9, 2009). The number of "occurrences" under an insurance policy is determined based on the facts of the case at hand, and the language of the particular policy(ies) at issue. *See Luk Clutch Systems, LLC v. Century Indemnity Co.*, 805 F. Supp. 2d 370, 377 (N.D. Ohio 2011).

In the case *sub judice*, the Policies' definition of "occurrence" demonstrates the intent of the parties by defining an "occurrence" in the following manner:

> "Occurrence" is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

The plain language of the Policies is clear that the "occurrence" must be an "accident." There is no alternate definition for "occurrence" in the Policies. Indeed, unlike in some of the

7

cases cited by Continental in support of a single occurrence, an "occurrence" is not defined in the alternative as an "accident" *or* "event" *or* "happening." *See Int'l Surplus Lines Ins. Co. v. Certain Underwriters,* 868 F. Supp. 917, 921-23 (S.D. Ohio 1994) ( involving policies that define "occurrence" generally as, "[A]n accident, event or happening including continuous or repeated exposure to conditions which results, during the policy period, in personal injury.... All such personal injury ... caused by one event or by continuous or repeated exposure to substantially the same conditions shall be deemed to result from one occurrence."). Rather, in the Policies, an "occurrence" is specifically and solely defined as an "accident."

The term "accident" is not defined in the Policies. A dictionary definition of "accident" encompasses, in relevant part: (1) an event or condition occurring by chance or arising from unknown or remote causes; (2) lack of intention or necessity; and (3) an unforseen unplanned event or condition.[4] *Webster's Third New International Dictionary*, 11 (unabridged, 1993). Continental makes no suggestion, let alone presents any evidence, that the single "occurrence" they advocate – the distribution of asbestos containing products – was an accident. Rather, the decision to launch a product, and the distribution of that product into the market, is an intentional act. It is not, as the definition of "accident" requires, an event that is: (1) the result of chance; (2) unintended or unnecessary; or (2) unforseen or unplanned. Thus, Continental's definition of "occurrence" as the distribution of asbestos-containing products contradicts the plain language of the Policies, and would require the Court to impermissibly ignore the term "accident" in the

---

[4]The Sixth Circuit and other federal courts frequently look to dictionary definitions to determine the plain and ordinary meaning of undefined terms in insurance contracts. *See Federal Ins. Co. v. Raytheon Co.*, 426 F.3d 491, 498-99 (1st Cir. 2005); *Comerica Bank v. Lexington Ins. Co.*, 3 F.3d 939, 944 (6th Cir. 1993).

definition of "occurrence", and/or imply terms (like "event" or "happening") in the definition of "occurrence" that are not there.

Second, there is no question that the Policies' definition of "occurrence" specifically includes exposures to dangerous conditions – like the presence of harmful asbestos fibers – that lead to injury. Indeed, as discussed, an "occurrence" is "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Thus, Plaintiffs' interpretation of the Policies' definition of "occurrence" as arising from an individual's exposure to harmful asbestos fibers is not only reasonable, it reflects the express intent of the parties. Unlike Continental's interpretation of occurrence, Plaintiff's definition of "occurrence" as exposure to asbestos fibers that leads to injury is consistent with the insurance contract language and gives effect to every word in the Policies' definition of occurrence.[5,6]

---

[5] Even if the Court found that the Policies' definition of "occurrence" was ambiguous and susceptible to more than one meaning, Plaintiffs' definition should prevail. It is well-settled law that when provisions of an insurance contract are "reasonably susceptible of more than one interpretation they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380-81 (Ohio 1980). Further, for "an insurer to defeat coverage through a clause in the insurance contract, it must demonstrate that the clause in the policy is capable of the construction it seeks to give it, and that such construction is the only one that can be fairly placed upon the language." *LuK Clutch Sys., LLC v. Century Indem. Co.*, 805 F. Supp.2d 370, 376-77 (N.D. Ohio 2011) (Dowd, J.),(citing *Ramsay v. Allstate Ins. Co.*, 416 F. App'x 516, 520-21 (6th Cir. 2011)). Therefore, to defeat summary judgment, Continental must prove not only that the definition of occurrence could be construed to mean all claims against MVS arose from a single occurrence, but also that this interpretation of "occurrence" is the only interpretation that can fairly be placed upon the policy, to the exclusion of the definition that Plaintiffs propose. In other words, Continental must also prove that reading the policy to find multiple occurrences is not a fair reading of the Policies' terms. Continental cannot do this.

[6] One could argue that the MVS claimants' exposure to the products distributed by MVS does not constitute an "accident" within the Policies' definition of "occurrence." While this may

Indeed, the Sixth Circuit, applying Ohio law, held that, under an insurance policy, each claimant's exposure to asbestos was a separate occurrence, and rejected the manufacturer's claim that its decision to use asbestos in its boilers was the sole occurrence. *Babcock & Wilcox Co. v. Arkwright-Boston Mfs. Mut. Ins. Co.*, 53 F.3d 762 (6th Cir. 1995). In *Babcock*, the policyholder ("Babcock") manufactured boilers and approved the use of asbestos insulation, as well as various components containing asbestos, in its boilers. *Babcock*, 53 F.3d at 764. Babcock sought coverage under certain excess insurance policies, claiming that it had exhausted the occurrence limit in the underlying coverage. The policies at issue in *Babcock* defined "occurrence" as "any happening or series of happenings, arising out of or due to one event taking place during the term of this contract in respect to all the Assured's operations." *Id.* at 765. Babcock argued that the asbestos claims against it arose out of a single occurrence and that the relevant "event" for purposes of determining the number of occurences was its decision to use asbestos in its boilers. *Id.* at 766. The court rejected this position, holding that the event was each plaintiff's exposure to asbestos.

The *Babcock* court quoted and relied on *Pittsburgh Corning Corp. v. Travelers Indemn. Co.*, No. CIV.A. 84-3985, 1988 WL 5302 (E.D. Pa. Jan. 21, 1988). *Pittsburgh Corning* was an asbestos case, where Pittsburgh Corning manufactured a product called Unibestos. The policy defined "occurrence" as "one happening or a series of happening arising out of or resulting from one event taking place during the term of this policy." *Id.* at *2. Travelers argued that the cause of all injuries was Pittsburgh Corning's manufacture and sale of asbestos. *Id.* The court rejected

---

be true, the exposure to a harmful, disease-causing agent – the asbestos fibers – in those products was unintended, and thus qualifies as an "accident" according to the common, dictionary definition of that term.

10

that argument, and held that "the 'cause' of the injuries in question is the exposure of each individual to asbestos. That exposure thus constitutes an occurrence for the purposes of determining the number of occurrences." *Id.*

Similarly, in *LuK Clutch*, 805 F. Supp.2d 370 (Dowd, J.), a judge of this Court held that the only reasonable reading of the insurance policies in the context of the facts before it was that the term "occurrence" meant the exposure to asbestos fibers from the plaintiff's products during policy periods that resulted in bodily injury, not the plaintiff's decision to manufacture asbestos-containing products. The policies at issue defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which happens during the policy period and which result in personal injury or property damage, neither expected nor intended from the standpoint of the insured." The Court noted that, "while the language of the clause at issue and the facts of the case are different, the Sixth Circuit's reasoning, albeit not binding, in [*Babcock*] is persuasive concerning this Court's analysis." *Id.* at 378, fn. 7. *See also Cincinnati Ins. Co. v. ACE INA Holdings Inc.*, 175 Ohio App.3d 266, 886 N.E.2d 876, 885–88 (Ohio Ct. App.2007).

This Court agrees that the reasoning in *Pittsburgh Corning, Babcock,* and *LuK Clutch* is persuasive.[7] The distinguishing factor in all of the cases wherein courts found the existence of multiple occurrences, as opposed to a single occurrence related to asbestos exposure is that the asbestos exposure involved a large number of different customers in various locations who were

---

[7]Continental devotes much of its argument to distinguishing the *Babcock* line of decisions on the ground that the policy language in those cases requires the occurrence to take place during the policy period. While there is no such limitation on an occurrence under the Policies (which do require "bodily injury" as a result of the occurrence during the policy period), the distinction is immaterial. The Policies' failure to restrict the definition of "occurrence" to an accident that occurs during the policy period does not in any way preclude a finding of multiple occurrences under the facts of this case.

11

exposed to asbestos-containing products in inevitably different situations. *Luk Clutch Sys.*, 805, F. Supp. 2d at 380. Likewise, the claims against MVS do not result from exposure at one site to one person or group. Indeed, this is not a case where there was a single product distributed to a very limited number of customers. Here, the claimants' alleged bodily injuries stem from exposure to different lots of asbestos, multiple different products (not all distributed at the same time), and in different industrial settings. The bodily injuries were caused by varying types of exposure to a variety of products in a multitude of different locations over many decades.[8]

Continental argues that the "cause test" should be applied. "Under the cause test, the number of occurrences is determined by reference to the cause or causes of the damage or injury, rather than by the number of individual claims." *ACE*, 175 Ohio App.3d at 278. Plaintiffs agree that the cause test should be applied, but in a logical way. Continental alleges that the sole cause of MVS' asbestos liability is the distribution of asbestos containing products. However, this is untenable position, for reasons that include that there were multiple asbestos-containing products, and multiple distributions of the different products to numerous sites and a multitude of customers in varying states over a period of decades. Certainly, a claimant injured by exposure to Thermobestos pipe insulation distributed to Ohio Edison in Dilles Bottom, Ohio does not have

---

[8]The cases cited by Defendants are neither controlling nor as persuasive as the *Babcock* line of cases. Defendants cite only four cases applying Ohio law. Three of these cases are more than 20 years old and predate the Sixth Circuit's decision in *Babcock*. Of the nine non-Ohio law cases cited by Defendants, all but two were relied upon by the insurer in *LuK Clutch Systems*, and were disregarded in that decision issued from this Court in 2011. The two more recent cases decided after *LuK Clutch* are equally unpersuasive. One, *John Crane Inc. v. Admiral Ins. Co.*, No. 04 CH 8266, at 37-44 (Ill. Cir. Ct. Apr. 12, 2006) applies Illinois law, not Ohio law. *Fina, Inc. v. Travelers Indem. Co.*, 184 F. Supp. 2d 547, 552 (N.D. Tex. 2002) is distinguishable because it involved claimants who were all exposed to asbestos at the same location at roughly the same time.

injuries with the same cause as a claimant who was injured by exposure to 85 magnesia segmental distributed to Ohio Power Company in Brilliant, Ohio, or a claimant who was injured by exposure to Thermobestos distributed to Goodyear Tire & Rubber in Port Newark, New Jersey.

Essentially, Continental ignores that the claims filed against MVS, while certainly related to its role as a distributor, are caused by exposure to the asbestos fibers within different products with different distributions to different customers and sites at different times over many years. There is simply no way to logically conclude that a single decision to distribute asbestos-containing products is the cause of claimants' injuries under these facts. Rather, claimants' injuries were proximately caused by exposure to asbestos fibers under unique conditions and circumstances. For this reason, and because Continental's preferred definition of "occurrence" is not consistent with the Policies' definition of that term, the Court finds that the MVS claimants' claims arose from multiple occurrences. Thus, the "per occurrence" limitations of the Policies have not been exhausted.

## IV. CONCLUSION

For all of the reasons stated herein above, the motion for partial summary judgment (ECF #38) on Count Two of the Amended Complaint filed by Plaintiffs is GRANTED, and the motion for partial summary judgment (ECF #46) on Count Two filed by Continental is DENIED. The asbestos claims against MVS arose out of multiple occurences. The per-occurrence limitations of the insurance Policies at issue have not been exhausted.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

DATED: April 6, 2015